Marvin, J.
This cause comes to this court by appeal from the court of common pleas of this county.
The plaintiffs are the children of one Joseph Schmitt, who died in Germany, about the year 1858, and Catherine Schmitt, who subsequently married the defendant, Vincens Schnell.
Vincens Schnell, after the death of his wife (the mother of these children), married the other defendant in this case.
' The suit is brought to have a trust declared for the plaintiffs in certain lands, the legal title to which is in Vincens Schnell.
The evidence shows that the father of. these plaintiffs, Joseph Schmitt, at the time of his death in Germany, left a small amount of property; that after the marriage of the widow with Schnell, Schnell became possessed of the property so left by the father of the plaintiffs, but the amount was very small, and from all that appears, may have become the property of the mother of the plaintiffs.
In 1860, Schnell came with his wife and her children to the city of Cleveland, arriving here in July, 1860; that he had then a very little property, converted into money, which was a part of the estate left by the deceased husband of his then wife; that he purchased in 1868, certain real estate in this city, taking the title to himself. At the time of this purchase, August Schmitt was about seventeen years old, John was about thirteen years old, and Agatha about twelve years old.
The down payment made on this purchase was fifty dollars, and consisted of money saved by the family after they had come to this city and whatever was left of the money realized from the estate of the deceased father of the plaintiffs, and the later payments were made out of the savings of the family from wages thereafter earned.
*155 It is claimed by the plaintiffs, that such property so purchased, was upon the agreement that it should be the property of the plaintiffs,subject to the life estate of the defendant, Vincens Schnell, and his then wife, the mother of the plaintiffs.
The plaintiffs were all born in Germany; they came to this country as I have already said, and to this city, about the month of July, 1860.
One of the plaintiffs is a daughter, Agatha Long; the other plaintiffs are August Schmitt and his brother John.
The evidence clearly establishes that the plaintiff, August Schmitt, worked faithfully from the time he came here until he was about twenty-six years old, and that his earnings,all, except what was necessary for his very economical support, were paid by him to Schnell; that he earned good wages from very soon after he came here up to the time when he was about twenty-six years old, when he left his step-father’s home, or ceased, at any rate, to pay his earnings to him.
The bank deposit of Vincens Schnell, introduced in evidence,shows deposits made by Vincens Schnell in the bank, and they were considerable each month up to the time when August ceased to pay his money to his step-father, which was when he was married, at the age of twenty-six. From that time on they were scarcely anything.
■ The evidence shows that the step-father earned very much less than August earned.
The evidence shows that the daughter Agatha, went to school for a little while after she came here, and thereafter went into service and earned for a part of the time, $1.50, then $2.00, and part of the time,$3,00 a week,and paid her earnings to her step-father, and was supported by him except that, as she was working in families, she had her board with the families for whim she worked.
There is no doubt in the minds of any member of the court or anybody who heard this .evidence, that the money *156 that purchased this real estate was earned in a great psrt by August Schmitt.
' Some part of it was earned by Agatha. It is not clear that John ever contributed more than he received.
He was in school for a considerable time. Then he went to learn a trade and boarded at home, and his wages were small; so it is doubtful whether John earned more than he received from his parents. But it is clear that the others did; surely that August did.
But, does that establish a trust, when we take the other-facts in connection with the case into consideration ?
The family lived together. So far as we can judge from this evidence,there was no thought among any of the family of treating Mr. Schnell otherwise than as their father would have been treated. They spoke of him as “father,” and he spoke of them as his children. The trust, if there was a trust here, is an express trust. Evidence introduced by the plaintiffs and relied upon by them, is the statement made more than once by Vincens Schnell, that he was buying the property for the family — buying a home for himself and the children.
August testified that soon after they came here there was talk in the family about the children going to work; that Schnell said, “We will get a home so we won’t have-to pay rent all our lifetime. ” And he said, “I will buya home and buy it, not for my sake, but for your sake.” “That’s the very expression he- used;” “He said that.” This is what August testifies to. That was prior .to the purchase.--
August says that at another time he and his mother were asked by Schnell to look at a lot which he thought of purchasing,and that his step-father said this to him: “You make pretty good pay. We will buy this lot. It is not for my sake, it is so the children have a home.”
And again, after August became of full age, Schnell- said this to him, quoting from the testimony of August:
*157 “He told me himself,he had an idea some people was talking to me that I was foolish for giving up my money. He says pay no attention; you will get it all back. Nobody will ever touch it except you children.”
Again he said at one time his mother and her husband had been into the business part of the city and came home.
And this language is used by August in his evidence.
’“They were up town, both of them, and told me at sup]] per time — they both had a smile — he says, we should have to worry no more. Everything was fixed all right now, nobody could touch that property except us children, if anything should happen to them. ’ ’
This conversation clearly referred to a visit made by the parents to some lawyer’s office where a will was executed by one or both of these parents. There is some conflict about the matter of the will, but it is clear that Mrs. Schnell did execute a will by which she undertook to bequeath to her children this property, the title to which was in the husband. After the death of Mrs. Schnell, the husband brought that will to the office of the probate judge, and the testimony is, that upon the advice of the probate judge, the will was destroyed. Perhaps they misunderstood the advice, as there is no authority that we know of for any one to destroy a will. But a will was made without question, by Mrs. Schnell, and we think Mr. Schnell executed a will at one time, devising this property to these plaintiffs. But after the death of his wife, he went abroad, and married again, and came back, and he repudiates any trust. He says the children have no interest in the property, and hence,this action wasbrought by the children to have this trust declared.
It was urged on the part-of VineensSchnell, on the hearing, that this case was prematurely brought, and we were cited to the case of Maud v. Maud 33 Ohio St., page 147, which was a suit of specific performance of agreement. The agreement claimed was, that certain property had been *158 bought with the monies furnished and earned by a family named Maud. The title was taken in the mother with the agreement that the children should have each of them certain parts of the land, at her death,and the court said that the case was prematurely brought, because,as the court say, reading on .page 149,
“Nor can it be as his counsel claim, that because his mother repudiated the contract, as he claims she did, he can have his action, upon the principle that a renunciation of a contract before the time for its performance amounts to a breach, so as to entitle a party to sue by way of anticipation. The mother has not denied but that the son may be entitled to his share at her death. She only insists, and for the purpose of this suit, that he is not entitled to it now.”
That is not the case we have here. We do not think that this case was prematurely brought. The evidence shows that Vincens Schnell repudiates any trust, and swears the property is his.
But we do think that the evidence fails to establish a trust, under the rules, not only in this state, but elsewhere, as to what is necessary to establish a trust.
We cite the case of Miller and wife v. Stokely et al., 5 Ohio St., 195, reading- from the syllabus:
“To establish an express trust in the case of a conveyance by deed absolute on its face, it is requisite that the evidence should be clear, certain, and conclusive, in proof not only of the existence of the trust, and that,too, at the time of the conveyance, but also as to its terms and conditions.
“It is not sufficient that circumstances should be in proof calculated to excite a suspicion; or even a probability," in the"minds of some person, that there might have been a trust; but the proof must shrw the existence of the trust affirmatively, and so conclusively as to remove all reasonable and well founded doubt.”
The same principle is laid dpwn in the case of Stahl *159 against the city of Cincinnati, 16 Ohio St., 17, in the syllabus of which this language is used:
“If an express trust can be engrafted by parol evidence, upon a conveyance of real estate, absolute on its face, yet such trust can be established only by clear, certain and conclusive evidence, in proof not only of the trust at the time of the conveyance, but also of its terms and conditions.”
This is the rule in this state. Oan it be said that a trust is so established in this case, that at the time of the conveyance of the property, such trust is shown to be clear, certain and conclusive, not only of the existence of the trust, but also what its terms and conditions were, by evidence which is conclusive and removes all reasonable doubt?
It seems that it is more like the case of Maud versus Maud, supra, although that was not a case to have a trust declared; but the court say, in that case:
Without entering into a discussion as,to the weight of the evidence, it seems to us that the upshot of the matter is, that parents and children all lived together, engaged in earning a common support, and accumulating a common property, with a sort of general understanding, that after the death of the father and mother, the children would succeed to the inheritance as a reward for their joint industry, but without any specific contract.”
This was a case where William Maud had agreed to work together with his parents and a brother in order to accumulate a certain property the property to be taken in the mother’s name.
The object in the present case, was the getting of a home, and there was a general understanding that at the death of the parents, the property was to go, as a matter of course, to the children. But, suppose children had been born to Vincens Schneli and his wife Catherine, after the purchase *160 of this property, and Vincens, while holding the title as be now holds it, had died intestate, would it be claimed that such children would have had no interest in this property?
Hessenmueller & Bemis, Attorneys for Plaintiffs.
Heisley & Selzer, and Kerruish, Attorneys for Defendants.
We do not think so. We think it was that kind of a case where the family had a general agreement that all hands would contribute what they could towards getting a home, and they would all enjoy the benefits of it. But there is no such agreement as will establish an express trust.
Our conclusion and judgment,therefore, is,, that the petition be dismissed.