Wren Reese, Inc., Appellant, *v.* Great Lakes Structural
Concrete Products, Inc., Appellee.

[Cite as Wren Reese, Inc., v. Structural Concrete
Products, Inc. (1975), 50 Ohio App. 2d 168.]

(No. 7937—Decided August 4, 1975.)

*Messrs. Dunbar, Kienzle & Murphey* and *Mr. Alan L.
Briggs,* for appellant.

*Messrs. Robison, Curphey & O'Connel, Mr. Ronald S.
Moening* and *Mr. E. Thomas Maguire,* for appellee.

Brown, P. J. This appeal by plaintiff-appellant, Wren
Reese, Inc., is from a judgment by the Lucas County Court
of Common Pleas in favor of defendant-appellee, Great
Lakes Structural Concrete Products, Inc., in a non-jury
trial involving an alleged breach of contract by defendant.
Plaintiff is a general contractor which had a general con-
tract with the state of Ohio, executed June 15, 1973, follow-
ing a public bidding on May 23, 1973, for the construction
of a bridge in Marion, Ohio.

Prior to submitting its bid, on May 23, 1973, plaintiff
solicited bids from prospective fabricators for the fabrica-
tion of one hundred 36" I-beams, an element of the bridge

to be constructed. The bids were only for fabrication and did not involve on-site labor. On May 22, 1973, defendant orally submitted to plaintiff a bid of $104,500 for the one hundred I-beams.

After plaintiff executed its bridge construction contract with the state, on June 15, 1973, it advised defendant that its "bid was good." On June 27, 1973, plaintiff wrote to the state and requested that the defendant be approved as fabricator for the bridge construction.

On July 6, 1973, the state testing laboratory called defendant to determine its production schedule incident to the approval of defendant as a fabricator. Defendant stated production would not start until December 1, 1973. Since approval of a fabricator requires inspection for approval approximately three weeks before the fabricator starts to fabricate prestressed members (as in this case), the state testing officer stated that the inspection of defendant would be delayed until then.

On July 12, 1973, defendant wrote to plaintiff and unilaterally increased its price for the I-beam from $104,500 to $109,750, an increase of $5,250. On July 13, 1975, plaintiff wrote to defendant stating it would not accept the price increase and would hold defendant to its original contract price of $104,500.

Thereafter, in August 1973, defendant repudiated the contract and refused to perform. Plaintiff then shopped for bids from other fabricators and finally executed a contract with Yost Company which furnished the I-beams for a contract price of $119,995. Plaintiff paid this price to Yost Company and sought to recover damages for breach of contract in the sum of $15,495, the difference between $119,995, which Yost received, and the $104,500, which defendant had originally bid.

The trial court decided that defendant was not obligated to plaintiff and that the contract between plaintiff and defendant was void because defendant was a subcontractor and that defendant, as a subcontractor, had not been properly qualified for the work sublet to him before the subcontract was executed between

plaintiff and defendant. The trial court concluded that such subcontract qualification of defendant was required by R. C. Chapter 5525, governing public contracts for state highways and bridges. R. C. 5525.06 provides:

"No successful bidder shall enter into a subcontract with any other person, involving the performance of any part of any work upon which such bidder may be engaged for the department of transportation, unless the subcontractor has been properly qualified for the work sublet to him."

The plaintiff's three assignments of error are as follows:

"1. Ohio Revised Code Sec. 5525.06 applies to subcontracts. The state of Ohio, Department of Transportation defines a subcontractor as a person who performs work on the job site. The trial court erred in concluding that defendant, a fabricator, who performed no work on the job site, was a subcontractor and, therefore, subject to O. R. C. Sec. 5525.06.

"2. The trial court erred in finding that O. R. C. Sec. 5525.06 barred recovery. If O. R. C. 5525.06 were a condition precedent to the contract, compliance therewith was waived because appellee repudiated before the condition could be met.

"3. The trial court erred in denying appellant's Rule 59 motion because its findings were the result of a mistake of law."

The assignments of error are well taken. We reverse.

Incident to rendering a general judgment in favor of defendant and dismissing the complaint, the trial court entered a finding of facts separate from its conclusions of law. The following separate findings of fact and conclusions of law are correctly stated and are amply supported by the record.

"This court finds that defendant entered into a contract with plaintiff; that plaintiff relied on that contract; and that the defendant was bound to perform. Although no time limit was set by the sub-contractor within which the contractor was to accept, this court finds that plaintiff did

act within a reasonable time according to the custom of the trade at that time, tried to get state approval of the defendant sub-contractor-defendant, and that defendant violated the terms of the contract. The court further finds that plaintiff acted within a reasonable time as enunciated in *Wargo* v. *Cox,* 26 Ohio App. 1 (1971). This Court further finds that the contract entered into between plaintiff and defendant was subsequent to the enactment of Section 5525.06 O. R. C., *supra,* effective 10/1/53.

"Conclusions Of Law

"Plaintiff and defendant entered into a contract. On or about May 22, 1973, plaintiff obtained a price bid from defendant and confirmed its bid by letter of May 25, 1973. Defendant was constantly advised that its 'bid was good.' Plaintiff acted within a reasonable time to confirm defendant's bid under the principles of *Wargo* v. *Cox, supra*; and accordingly, under the rationale of that decision and the common-law principles as set forth in 17 Am. Jur. 2d, Section 449, and under the authority of *Brewing* v. *Maxwell,* 78 Ohio State 54 (1908) and *Schmitt* v. *Schnell,* 14 Ohio C. C. 158 (1897), would have been entitled to recover damages from defendant."

R. C. 5525.06 does not apply to defendant because the defendant corporation on the facts in the record in this case is a fabricator and not a subcontractor. Nowhere in R. C. 5525.06, nor elsewhere in R. C. Chapter 5525 is there a definition of "subcontractor." Parties to a contract may agree upon the definition and meaning of terms used in such contracts. The plaintiff and the state, through its Department of Transportation, by incorporating the department's standard construction and material specifications in their written contract for the bridge construction, defined the meaning of "fabricator" and "subcontractor" as follows:

"Sec. 101.50 Subcontractor. An individual, firm or corporation to whom the Contractor sublets part of the contract to be performed on the job site, who prior to such undertaking receives the written consent of the Director,

and who is qualified under 5525.02 through 5525.09 inclusive, ORC.''

. ''Sec. 101.22 Fabricator. The individual, firm or corporation that fabricates structural metals or prestressed concrete members as an agent of the contractor.''

It is beyond dispute that defendant in agreeing to fabricate and to furnish one hundred I-beams to plaintiff did not agree to ''perform on the job site'' within the meaning of Section 101.50 of the Department of Transportation's Construction and Material Specifications, and thus was not a subcontractor. However, as to the I-beams, defendant was a firm "that fabricates structual metals or prestressed concrete members'' within the meaning of Section 101.22 of such plans, and thus was a fabricator. *Cf. Matzinger* v. *Lumber Co.* (1926), 115 Ohio St. 555, and R. C. 1311.01.

The director of transportation, in discharging the statutory function of the Department of Transportation and in exercising its statutory duties and powers, had authority in the written contract with plaintiff for the bridge construction to provide for a definition of subcontractor and fabricator.[1]

R. C. 5525.06 is ambiguous with reference to the meaning of the term "subcontractor." Where a statute is am-

---

[1]The power of the director of transportation to prescribe the provisions of a construction contract within the scope of his functions appears in R. C. 5501.02, as follows:

"All duties, powers, and functions conferred by law on the department of transportation and the divisions of the department shall be performed under such rules as the director of transportation may prescribe, and shall be under his control. * * *"

R. C. 5501.11, Department of transportation, with respect to highways, reads:

"The functions of the department of transportation with respect to highways shall be:

"(A) To establish state highways on existing roads, streets, and new locations and to construct, reconstruct, widen, resurface, maintain, and repair the state system of highways and the bridges and culverts thereon * * *."

See, also, 27 Ohio Jurisprudence 2d 110, Highways and Streets, Section 85, and 27 Ohio Jurisprudence 2d 32, Highways and Streets, Section 17.

biguous, the court, in determining the intention of the legislature, may consider the administrative construction of the statute placed upon it by an administrative agency of the state—in this case the Department of Transportation.[2]

In interpreting statutes, R. C. 1.49(A), requires a consideration of the object sought to be attained. The object to be attained by R. C. 5525.06 is to insure that only qualified parties perform construction work for the state, and that a thorough inspection and approval procedure exists for qualifying subcontractors and fabricators.[3]

As a fabricator, defendant had to be approved by the Department of Transportation as provided in Section 515.04 of the plans and specifications of the general contract.[4] Nothing in 515.04 requires that a fabricator be qualified before the general contractor may enter into a binding construction contract with the state, or before a

---

[2]R. C. 1.49 provides:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

(A) The object sought to be attained;

(B) The circumstances under which the statute was enacted;

(C) The legislative history;

(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

(E) The consequences of a particular construction;

(F) The administrative construction of the statute."

[3]Also relevant to the interpretation of R. C. 5525.06 is R. C. 1.42, which provides:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

[4]Section 515.04 of the plans and specifications provides:

"515.04 Plant requirements. Plants for the manufacture of precast pretensioned bridge elements shall be approved by the Director before bridge elements are produced. Requests for such approvals shall be submitted to the Director at least three weeks prior to the date of manufacture of elements. Requests shall include details of the plant facilities, and the productions method the manufacturer intends to use. Satisfactory qualification on previous projects of similar type will be accepted as prequalification provided plant operations continue to be satisfactory."

general contractor can enter into a binding contract with a fabricator.

An approval of the defendant as a fabricator was not accomplished because, as the trial court correctly found, the defendant had repudiated its contract with plaintiff before the start of the actual construction of the fabricated items. This repudiation of its contract by defendant occurred before an approval of defendant was required or could be obtained in accordance with Section 515.04 of the plans and specifications. A repudiation of a contract before the time for performance gives the adverse party the option to treat the entire contract as broken and to sue for breach of contract, and there is no necessity in such case for a tender of performance or compliance with conditions precedent, or to wait for the time for performance to arrive. *Brewing Co.* v. *Maxwell* (1908), 78 Ohio St. 54; *Schmitt* v. *Schnell* (1897), 14 Ohio C. C. 153, aff'd 59 Ohio St. 630 (1899).

Defendant relies heavily upon the case of *Weybrecht Co.* v. *Hartford Indemnity Co.* (1954), 161 Ohio St. 436, in support of its contention that it falls within the meaning of the term "subcontractor." The *Weybrecht* case is inapplicable for the following reasons: (1) it construes the meaning of the word "subcontractor" in R. C. 154.54 through 153.57 (formerly G. C. 2365-1 through 2365-4), governing a performance bond of a general contractor in construction of a public building, and not R. C. 5525.06, which applies in the case at bar; (2) it does not involve a contract which is predicated upon another written contract (a general contract) where the parties by agreement have defined the meaning of the word "subcontractor," as well as the related term "fabricator." The holding in *Weybrecht* should be restricted to the facts and applicable statutes considered in that case. In *Weybrecht*, it is clear from the opinion that the general contractor's performance bond, regulated by G. C. 2365-1 through 2365-4, was intended to assure payment of claims of those furnishing materials (fabricators) in the construction of a public building.

*Judgment reversed.*

WILEY and POTTER, JJ., concur.