RINEHART, APPELLANT, *v.* TOLEDO BLADE COMPANY ET AL., APPELLEES.

(No. 5-83-32—Decided April 12, 1985.)

*O'Brien & Bauer Co., L.P.A., Bernard K. Bauer, Oxley, Malone, Fitzgerald & Hollister* and *Michael J. Malone,* for appellant.

*Connelly, Soutar & Jackson, William M. Connelly* and *Steven P. Collier,* for appellees.

MILLER, J. This is an appeal by plaintiff, Linda L. Rinehart, an employee of Ohio Bank and Savings Company, from a judgment of the Court of Common Pleas of Hancock County directing a verdict for defendants at the close of plaintiff's case.

On May 24, 1981, an article written by defendant Lynda Brooker, entitled "Fear and Loading," appeared in the Toledo Blade. The article concerned a course offered at a Findlay, Ohio firing range to women interested in self-defense and the use of handguns. Plaintiff was interviewed by defendant Brooker and referred to and quoted in the article.

After the article was published plaintiff filed a complaint alleging that defendants, Lynda Brooker and the Toledo Blade Co., by publishing the article, portrayed plaintiff in a false light,

that the article was an unwarranted and/or wrongful intrusion into the private and personal affairs of plaintiff in which the public had no legitimate concern, and that the article was published with knowledge of its falsity or in reckless disregard of the truth of the matters asserted therein.

The matter went to trial to a jury on June 13, 1983 and, after plaintiff had rested her case, defendants moved for a directed verdict in their favor. Defendants' motions were granted and plaintiff appeals setting forth five assignments of error.

At oral argument before this court plaintiff withdrew her third assignment of error. We will consider hereinafter plaintiff's remaining assignments of error and the facts pertinent thereto.

Assignment of error number one:

"The Trial Court erred, as a matter of law, by directing a verdict in favor of the defendants at the close of the plaintiff's case."

Civ. R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In determining such a motion the evidence submitted must be given an interpretation most favorable to the party against whom it is made, including not only direct or positive evidence, but also any reasonable inferences which may be drawn therefrom. *Willis* v. *Eckert Packing Co.* (1969), 21 Ohio App. 2d 117, 119 [50 O.O.2d 216].

The fourth paragraph of the syllabus of *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215 [58 O.O.2d 424], states:

"It is the duty of a trial court to submit an essential issue to the jury where there *is* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue, or, conversely, to withhold an essential issue from the jury when there *is not* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue." (Emphasis *sic*.)

Plaintiff sets forth five "issues" under the first assignment of error. Issues one, three and four are as follows:

"1. Will Ohio permit recovery for false light invasions of privacy?

"* * *

"3. May 'consent' operate as an affirmative defense in an action for invasion of privacy when it is tacitly given by [a person] other than a 'public figure' respecting a feature story which is not 'hard news' when such claimed consent is obtained as a result of misrepresentations and conditioned upon a promise not to publish until a copy of the article could be reviewed by the party who purportedly consented?

"4. Absent proof of actual hatred or ill will, may punitive damages properly be awarded when actual malice may be inferred from circumstantial evidence?"

It is well-established by paragraphs one and two of the syllabus of *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60], that an action for invasion of the right of privacy exists. Those paragraphs provide:

"1. The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.

"2. An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private

affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

However, the above issues are all directed to the applicability of the doctrine of false light invasion of privacy.

The Supreme Court of Ohio has spoken only twice concerning the doctrine of false light invasion of privacy.

*Sustin* v. *Fee* (1982), 69 Ohio St. 2d 143, 145 [23 O.O.3d 182], at fn. 4, reads as follows:

"Today the intrusion into a person's seclusion is recognized as but one of four separate branches of tortious invasion of privacy. These are set out in Section 652A of the Restatement of Torts 2d, at page 376, as follows:

" '(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

" '(2) The right of privacy is invaded by

" '(a) unreasonable intrusion upon the seclusion of another * * *

" '(b) appropriation of the other's name or likeness * * *

" '(c) unreasonable publicity given to the other's private life * * *

" '(d) publicity that unreasonably places the other in a false light before the public * * *.'

"See, also, Prosser on Torts (4 Ed.), 802, Sec. 117. The development of the right of privacy as a separate tort is chronicled in *Zacchini* v. *Scripps-Howard Broadcasting Co.* (1976), 47 Ohio St. 2d 224 [1 O.O.3d 129], reversed on other grounds (1977), 433 U.S. 562."

The "false light" doctrine of invasion of privacy was, however, not involved in that case.

In *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 372, the court said:

"This court has recognized a cause of action for invasion of privacy in *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60]. However, this court has not recognized a cause of action for invasion of privacy under a 'false light' theory of recovery. Under the facts of the instant case, we find no rationale which compels us to adopt the 'false light' theory of recovery in Ohio at this time. * * *"

We thus conclude that the Supreme Court of Ohio has not chosen to adopt a separate doctrine of false light recovery for wrongful invasion of privacy and we find no reason to adopt same.

The above three issues being based upon the doctrine of false light invasion of privacy which Ohio has not adopted and for which recovery will not lie, no prejudicial error resulted to plaintiff from the trial court directing a verdict for defendants thereon.

Issue number two is:

"Must a knowing falsehood or reckless disregard for the truth be established under a claim for invasion of privacy for publicizing one's private affairs with which the public has no legitimate concern?"

Plaintiff argues that 3 Restatement of the Law 2d, Torts (1977) 383, Section 652D, applies herein. That section states:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public."

Plaintiff asserts that a knowing falsehood or reckless disregard for truth need not be established in order to sustain a claim based thereon.

The trial court in its comments made in granting defendants' motions for directed verdict stated that the testimony did not establish that the article was published with knowledge of its falsity or in reckless disregard of the truth.

Although we do not find that the Supreme Court has specifically adopted Section 652D, the second paragraph of the syllabus of *Housh* v. *Peth, supra,* contains comparable language:

"An actionable invasion of the right of privacy is * * * the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humilitation to a person of ordinary sensibilities."

From the above language it is evident that the publicizing of one's private affairs with which the public has no concern is actionable without establishing a knowing falsehood or reckless disregard of truth on the part of the publisher.

Thus to the extent that the plaintiff was contending that defendants invaded her right of privacy by publicizing her private affairs with which the public had no legitimate concern, the trial court was in error in indicating that a knowledge of falsity or reckless disregard of truth was essential to the maintaining of such an action.

Issue number five:

"May a trial judge 'weigh' the evidence before him on a motion for directed verdict?"

The trial court stated in granting defendants' motions to dismiss:

"* * * The court after reviewing, weighing can only conclude that the testimony does not rise and does not establish that this article was published with knowledge of its falsity or in reckless disregard to the truth. * * *"

As stated in *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284 [21 O.O.3d 177]:

"The law in Ohio regarding directed verdicts is well formulated. In addition to Civ. R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. *Durham* v.

*Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31 [1 O.O.2d 181]. * * *"

Thus it appears that the trial court weighed the evidence.and to the extent that the trial court did so in a jury trial case in arriving at its conclusion that the testimony did not establish that the article was published with knowledge of its falsity or in reckless disregard of the truth, the same constituted error prejudicial to plaintiff.

The first assignment of error is well-taken and the judgment of the trial court must be reversed and the cause remanded for further proceedings.

Having arrived at that conclusion we would not proceed further to consider plaintiff's remaining assignments of error except for the mandate of App. R. 12(A) requiring that all errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each error.

Assignment of error number two:

"The Trial Judge erred, as a matter of law, and abused his discretion by prohibiting plaintiff or her counsel from mentioning or offering into evidence any publication of an article that appeared in another newspaper, if it was different from the article that appeared in the defendant newspaper concerning plaintiff."

Defendants, prior to trial, moved the court for an order prohibiting plaintiff or her counsel from mentioning or offering into evidence any publication of an article that may have appeared in another newspaper, if it is different from the article that appeared in the Toledo Blade.

The court granted the motion stating as its reasons:

"* * * [T]he action here * * * is * * * plaintiff against the Toledo Blade Company and Lynda Brooker. It's not against another newspaper or wire service. That being the case, for another article that may have some of the same comments or cover [some] of the same

material, I think is not conducive to assisting the jury in reaching a decision as to the issues between these litigants * * *."

The purpose of a motion *in limine* is to avoid the injection into a trial of a potentially prejudicial matter which is not relevant and is inadmissible. *Hammond* v. *Moon* (1982), 8 Ohio App. 3d 66, 70. See, also, McCormac, Ohio Civil Rules Practice (1984 Supp.) 126-127, Section 12.30.

"Relevant evidence" is defined in Evid. R. 401:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Relevancy is further explained by the Staff Note to Evid. R. 401:

"Relevancy is not an inherent characteristic of any item of evidence. When it exists, it is a relationship between an item of evidence and a matter properly provable in the case. Evidence is relevant when it tends as a matter of common experience and logic to prove a matter of consequence. In the rule, 'of consequence to the determination' is an expression of materiality. * * *"

Evid. R. 402 provides that irrelevant evidence is inadmissible.

The facts that are of consequence in the determination of the instant cause are set out in the *Housh* case, *supra, i.e.,* whether defendants unwarrantedly appropriated, exploited, publicized or intruded into plaintiff's private affairs by writing or publishing the article entitled "Fear and Loading."

Evidence of, or reference to, the article printed in other newspapers would not tend to make the existence of any of these facts more probable or less probable. Therefore, the trial court properly determined the articles in other newspapers to be irrelevant and properly granted the motion *in limine.*

Plaintiff's second assignment of error is without merit.

Assignment of error number four:

"The trial judge abused its [*sic*] discretion by refusing to permit the plaintiff to amend to conform her complaint to the evidence adduced respecting wage loss."

At the end of her case, plaintiff's counsel made the following motion:

"Yes, Your Honor. At this time pursuant to Ohio Civil Rule 15(B), we move the court to amend the pleadings to conform to the evidence in that impliedly the issue of damage to the plaintiff in terms of her position in advancement of Ohio Bank has been offered, that is an item of special damage which was not pleaded. It was discussed in opening statement to which there was no objection and indeed questioning was carried out by counsel for the defendant[s] respecting such matters, so we do request the court and so move pursuant to Rule 15(B) to amend the Compalint [*sic*] in this matter, to reflect the fact that Linda Rinehart has and will in the future lose wages as a consequence of the publication in question."

The court responded after the motion was argued, in the following manner:

"The court is satisfied that there are too many if's in this motion. The evidence indicates to the court that this may be only one or three or four factors, and the testimony is not such that the court feels that an amendment should be granted at this time, so your motion is overruled."

Civ. R. 15(B) provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment.

Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

In *State, ex rel. Evans*, v. *Bainbridge Twp. Trustees* (1983), 5 Ohio St. 3d 41, the court stated in its syllabus:

"1. An implied amendment of the pleadings under Civ. R. 15(B) will not be permitted where it results in substantial prejudice to a party. Various factors to be considered in determining whether the parties impliedly consented to litigate an issue include: whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue.

"2. Under Civ. R. 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue was introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue.

"3. Whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed, absent showing of an abuse of discretion."

Plaintiff contends that the issue of past, present and future loss of advancement and/or pay was impliedly tried without objection.

The record indicates that defendants' attorney did not object when the president of the bank, at which plaintiff worked, testified about evaluating plaintiff's performance in her work and stated that the article in question gave concern to plaintiff's employers. However, the bank president testified that absenteeism on plaintiff's part was more of a concern. Defendants' counsel also made no objection when the president stated that the article was in plaintiff's employment file and was, therefore, a consideration in her evaluation and that said article would remain in her personnel file to be considered in future evaluations. Neither was objection made when the bank president testified that plaintiff was not promoted after her evaluation and, thus, did not get a twenty percent salary increase.

The bank vice-president testified, again without objection, that the article was one of five or six matters considered in plaintiff's performance evaluation.

Defendants' counsel did, however, object when the bank vice-president was asked what effect the newspaper article had on plaintiff herself, when the plaintiff was questioned about the effect of the article on her ability to perform her job, and its effect on her absenteeism from work.

The record indicates that defendants understood plaintiff offered the testimony of plaintiff's employers to put forth the issue of plaintiff's lost wages after plaintiff's work evaluation. Indeed, defendants cross-examined the witnesses as to this issue. The trial court also recognized that this evidence was aimed at the issue of whether the article in question was or may have been a factor in plaintiff's work evaluation and subsequent non-promotion. The court stated, as quoted above, that the article may have been one of several factors considered during the referred-to evaluation.

Therefore, since the issue of whether plaintiff's loss of the twenty-percent salary increase was the result of the publication of the article was tried by

consent, the trial court should have permitted an amendment of the pleadings in that respect.

However, any evidence of the future effect of the article on plaintiff's work evaluations or salary was speculative at best. The bank president, while stating that the article would remain in plaintiff's file, stated that if plaintiff developed her professionalism in the future, there would be no foreseeable problems with her getting a promotion. No real evidence of the unpleaded issue of future wage loss was introduced.

For this reason, plaintiff's fourth assignment of error is well-taken only to the extent that it assigns as error the court's not permitting an amendment of the pleadings to conform with the evidence adduced relating to the past loss of wages. In all other respects, the assignment of error is without merit.

The fifth assignment of error is:

"The Trial Judge abused his discretion by refusing to take judicial notice of work life expectancy data respecting the plaintiff."

Plaintiff moved the court to take judicial notice of the fact that a female, divorced, widowed or separated, forty years of age, would have a work life expectancy of twenty-three years. This evidence, plaintiff contends, was related to the issue of plaintiff's lost wages and future financial standing. The court overruled the motion.

Since this issue deals with future earnings which would be totally speculative and not cognizable herein, we find no error in the trial court's failure to take judicial notice of life work expectancy.

For the prejudicial errors cited we reverse the trial court's judgment and remand for new trial and further proceedings.

*Judgment reversed.*

GUERNSEY, P.J., and COLE, J., concur.