LIVI STEEL, INC., Appellant,

v.

BANK ONE, YOUNGSTOWN, N.A., Appellee.

[Cite as *Livi Steel, Inc. v. Bank One, Youngstown, N.A.* (1989), 65 Ohio App.3d 581.]

Court of Appeals of Ohio,
Trumbull County.

No. 88–T–4133.

Decided Dec. 12, 1989.

*Comstock, Springer & Wilson* and *Thomas Wilson,* for appellant.

*Fleck, Mostov & Swartz, Jeffrey B. Fleck* and *Mary DeGenaro,* for appellee.

Ford, Judge.

Appellant, Livi Steel, Inc., is a fabricating structural steel concern. In 1986, appellant, which had been leasing various work facilities, decided to purchase commercial real estate suitable for centralizing its business. Shortly after appellant began searching for an appropriate site, a local real estate agent contacted appellant and informed it of a location which the realtor thought might be desirable. This property was located at 1451 Buena Vista Road in Warren, Ohio.

The Buena Vista Road plant was owned by appellee, Bank One, Youngstown, N.A. The property, which was classified as O.R.E.O. (other real estate owned) property, was obtained by appellee at a sheriff's sale, after the previous owner defaulted on its payments. Appellee was anxious to sell it, as its upkeep was costly.

At the time, this facility had one tenant, Concord Steel ("Concord"). Concord had been renting space in the Buena Vista Road plant (which consisted of several buildings) under a five-year lease entered into with the previous owner. This lease provided that Concord could renew for another five years if it did so prior to one hundred twenty days before the end of the lease. Concord missed this deadline but entered into discussions with appellee for an extension. During the negotiations for the lease extension, Concord and appellee discussed the possible purchase of the 1451 Buena Vista Road property. These negotiations purportedly resulted in appellee accepting an offer from Concord to purchase the Buena Vista Road site.

Concurrent with the negotiations between appellee and Concord, appellant and appellee also entered into a purchase agreement, in which appellant agreed to purchase the 1451 Buena Vista Road property. A meeting was held on October 25, 1986 in which appellant, appellee, and the concerned real estate agents met to discuss the possible purchase. Appellant offered $395,000 for the property, and appellee accepted, subject to three conditions. Appellant was required to pay $5,000 in earnest money, immediately seek financing, and work with appellee and Concord to secure a new lease for Concord. The purchase agreement stated that the parties had one hundred twenty-five days to perform this contract.

Appellant attempted to tender the earnest money at that time, but an agent of appellee stated that payment was unnecessary until the lease between Concord and appellant was negotiated. Testimony indicates that, at the closing of the October 25 meeting, the agent of appellee informed appellant, "Congratulations, you've just bought yourself a steel plant." The purchase agreement was signed by appellee two days later. (Robert Delisio, a vice

president of appellee, testified that the correspondence between appellee and Concord had become confused. He was under the impression that he had terminated appellee's offer to sell by letter and only later realized that appellee had already accepted Concord's offer.)

Appellant took the purchase agreement, appraisal of the property, and other information to its bank to begin discussions on financing. No loan application was signed at that point. Appellant also informed Concord that it now owned the property. At this point, Concord contacted appellee and demanded to know why appellant claimed to own the property. After consultations with counsel, appellee decided that the agreement with Concord was binding and informed appellant accordingly.

Appellant sued for breach of contract. A jury trial was held. After the close of appellant's evidence, appellee moved for directed verdict. This motion was subsequently granted, on the grounds that appellant had failed to satisfy the conditions precedent in the contract and that the damages claimed were speculative. Appellant now timely appeals that decision, and presents the following assignments of error:

"1. The trial court erred in overruling plaintiff-appellant's motion for directed verdict and in granting defendant-appellee's, Bank One of Youngstown, N.A., motion for directed verdict on the basis that no contract was ever established between the parties.

"2. The trial court erred in granting defendant-appellee's, Bank One of Youngstown, N.A., motion for directed verdict on the basis that no damages were proven by plaintiff."

In appellant's first assignment of error, it claims that the trial court erred in denying its motion for a directed verdict and granting appellee's motion for same on the issue of the presence of a contract between the parties. Civ.R. 50(A)(4) states that, when a motion for a directed verdict has been properly made and "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that * * * reasonable minds could come to but one conclusion upon the evidence submitted * * *," the court shall sustain the motion and direct a verdict for the prevailing party. See, also *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 21 OBR 345, 487 N.E.2d 920. Therefore, for the trial court to have entered judgment for the appellee in this case, it must have found, construing the evidence most strongly in favor of appellant, that reasonable minds could come to one conclusion, namely, that no valid contract existed between the parties. Examination of the record indicates that the trial court's decision is in error as a matter of law.

A close reading of the trial court opinion reveals that the decision was grounded upon the following syllogism. Appellant was a party to an agreement which contained certain specific conditions which were to be performed in order to effectuate the sale of the 1451 Buena Vista Road property. These conditions were unperformed at the time appellee repudiated the proposal. Therefore, no valid contract had come into existence between appellant and appellee. While this theory is logically correct, it does not comport with the law of the state of Ohio.

Appellee directs this court's attention to *Broderick Co. v. Colville* (1931), 41 Ohio App. 449, 179 N.E. 810, for the proposition that "the rule is laid down that the making and delivering of a writing, no matter how complete a contract, according to its terms, is not a binding contract if delivered upon a condition precedent to its becoming obligatory. In such case it does not become operative as a contract until the performance and happening of the condition precedent." *Id.* at 451, 179 N.E. at 810.

Appellee's reliance on *Colville* is misplaced, as the case does not address the ramifications of a repudiatory breach by one party before the other party has a chance to perform the conditions. *Colville* does not control in these situations.

As Corbin explains:

"A repudiation or other total breach by one party enables the other to get a judgment for damages or for restitution without performing acts that would otherwise have been conditions precedent. It is no longer necessary for the plaintiff to perform or to tender performance. This is true whether the repudiation is in express words or is by an act that makes performance by the repudiator apparently impossible or very improbable. If a vendor of land makes conveyance of it to a third party, it is not necessary for the buyer to tender the price before bringing suit." 5 Corbin, The Law of Contracts (1951) 920, 922, Section 977. See, also, *Wiedemann Brewing Co. v. Maxwell* (1908), 78 Ohio St. 54, 84 N.E. 595.

Similarly, the Restatement of Contracts states that "(w)here a party's repudiation contributes materially to the non-occurrence of a condition * * * the condition is excused." Restatement of the Law 2d, Repudiation (1981), Section 255. The rationale behind this legal maxim is that no one should be required to perform a futile act. (This maxim is similar to the equitable maxim noted by appellant.)

As noted, the quoted sections of Corbin and the Restatement are consistent with the Ohio law in this area.

"A repudiation of a contract before the time for performance gives the adverse party the option to treat the entire contract as broken and to sue for breach of contract, and there is no necessity in such case for a tender of performance or compliance with conditions precedent, or to wait for the time for performance to arrive." *Wren Reese, Inc. v. Structural Concrete Products, Inc.* (1975), 50 Ohio App.2d 168, 174, 4 O.O.3d 137, 140, 362 N.E.2d 269, 273; *Brewing Co. v. Maxwell, supra; Schmitt v. Schnell* (1897), 14 Ohio C.C. 153.

Examination of the facts in the case *sub judice* indicates that appellant and appellee had a valid executory contract which was entered into on October 25, 1986.

This agreement contained all of the valid requisites of a real estate contract: competent parties; lawful subject matter; sufficient consideration; meeting of the minds; and a written document which identified the property. 17 Ohio Jurisprudence 3d (1980), Contracts, Section 11; 80 Ohio Jurisprudence 3d (1988), Real Property, Section 3.

Specifically, this contract called for appellant to buy and appellee to sell the 1451 Buena Vista Road property for $395,000. The contract was subject to three conditions: the payment of earnest money; the acquisition of financing; and the drafting of a lease for Concord Steel that would prove satisfactory to appellant, appellee, and Concord. Of these three conditions, one (the payment of earnest money) was waived. Appellant had one hundred twenty-five days, from the signing of the contract, to fulfill the other two conditions. The fact that these conditions were not performed at the time of appellee's repudiation does not mean that the parties did not have a valid contract. Quite the contrary, the purchase agreement appears to satisfy all contractual requisites.

■ Consequently, the trial court's decision is predicated on an inappropriate premise as a matter of law. The law is not so formalistic and rigid as to require performance of all conditions in an executory contract before the other party repudiates at the risk of having the contract found void. Such a result would lead to pragmatic contractual uncertainty, as every party required to perform a condition within a time period would have to be concerned that the other party could repudiate with impunity at any time before performance. The law of contracts was not intended to work in this fashion.

Appellee argues that "[t]he bottom line is that none of the three contingencies [was] ever fulfilled." Further, appellee strenuously asserts that this contract is unenforceable *at law* because it requires performance on the part of a third party (Concord). The basis for appellee's contention is *Ferguson Realtors v. Butts* (1987), 37 Ohio App.3d 30, 523 N.E.2d 534, which states:

"Where a party's performance in a purchase contract for the sale of land depends upon the consent or approval of one not a party to the contract, * * * *specific performance* cannot be decreed * * *." (Emphasis added.) *Id.* at paragraph three of the syllabus.

Appellee urges that the *Butts* rationale explains why the purchase agreement between the parties was unenforceable as a contract. This argument is flawed since it assumes that precedence inhibiting the granting of specific performance (an *equitable* remedy) is equally applicable as a prohibition against the granting of a contractual remedy (money damages). However, such is not the case. For appellee's edification, the reason that courts will not grant specific performance in the *Butts* scenario is that equity does not require compelling the third party to perform a contract to which he was not privy. However, the court can grant money damages to the aggrieved plaintiff, at law, without having to compel the third party to do anything.

Appellee further argues that appellant has raised a new argument in this court and requests that this court disregard the argument entirely, according to the dictates of App.R. 12(A). The argument referred to by appellee is one in which appellant claims that appellee breached its contract by virtue of breaching the warranty of seisin. Appellant argues that, as appellee had already sold the property to Concord, language in the purchase agreement which promised to furnish a warranty deed had already been breached. Appellee is correct in asserting that this argument was not made before the trial court (although it could possibly be considered to be a portion of the main breach of contract claim). App.R. 12(A) allows this court discretion as to whether to address matters not originally argued before the trial court, but which are clearly evidenced by the record in this case. As this argument was not made before the trial court, and as the outcome of appellant's appeal does not turn on our consideration of this contention, this court will decline to examine the breach of warranty argument. Nevertheless, this court finds that the trial court was incorrect as a matter of law in its application of the facts of this case to the applicable contract law and, as a result, appellant's first assignment has merit.

Appellant's second assignment of error challenges the trial court's granting of appellee's directed verdict on the issue of damages. The trial court granted this motion on the grounds that damages must be shown with reasonable certainty. *Batista v. Lebanon Trotting Assn.* (C.A.6, 1976), 538 F.2d 111. The trial court held that the testimony of appellant, on the issue of damages, was "speculative, uninformed, and, in this court's opinion, self-serving."

Examination of the evidence adduced by appellant in this case reveals that the trial court was in error in determining that all of the appellant's evidence

of damages was speculative. Further, review of the exhibits leads this court to the conclusion that appellant was entitled, if it so elected, to equitable relief, subject to concerns raised in *Butts, supra.*

■ This court finds that the parties appear to be laboring under the misconception that a valid agreement existed between appellee and Concord Steel which predated the contract entered into between appellant and appellee. The record does not support this conclusion. On September 22, 1986, appellee received a letter from John Pistorio and Bob Maron, officers at Concord Steel, in which Pistorio and Maron offered to buy the property for $400,000. The letter stated that financing terms were to be discussed at a future time. On October 15, 1986, appellee sent a "counter proposal" to Pistorio and Maron. This proposal contained the same price term, but also contained financing terms which were not contained in the September 22, 1986 letter. When Pistorio and Maron did not accept the counterproposal, appellee withdrew its offer on October 27, 1986 and accepted appellant's offer.

After appellee accepted appellant's offer, appellant attempted to negotiate a lease with Concord Steel, in accordance with one of the contract's conditions. Concord informed appellant that it, rather than appellant, had a contract to purchase the 1451 Buena Vista Road property. Both appellant and Concord threatened to sue appellee. Evidently, after conferring with counsel, appellee determined that a valid contract was entered into between appellee and Pistorio and Maron which predated that made by appellant and appellee. The facts of this case and the applicable law do not, however, support this conclusion.

When appellee sent its October 15, 1986 letter to Pistorio and Maron, the letter, which appellee admits was a counterproposal, contained additional and substantively different contractual terms (namely, the financing provisions).

"[I]n accordance with general contract principles, if the acceptance modifies or alters the terms set forth in the application, then the acceptance is deemed a rejection and counteroffer, which must be accepted by the applicant in order to be effective as a contract." *Slezak v. Westfield Ins. Co.* (July 7, 1977), Cuyahoga App. No. 35474, unreported.

The offer, which was contained in the counterproposal, remained in effect only until revoked on October 27, 1989. Accord 1 Restatement of the Law, Contracts (1932) 44, Section 35; *Chandak v. Roschman* (Dec. 14, 1982), Allen App. No. 1–82–19, unreported. When appellee notified Concord of the revocation of its offer on October 27, the offer was terminated and could not be revived by Concord's subsequent notice of acceptance. *Chandak, supra.* Consequently, there could not have been a contract entered into by Concord and appellee which predated the accord entered into by appellant and appellee,

as appellee accepted appellant's offer on October 27 and did not enter into a valid contract with Concord until at least November 14, 1986.

Appellant did not request specific performance in the original trial and this court cannot speculate as to whether appellant will elect to pursue this remedy upon remand. This court can, and does, take exception to the trial court's statement that "[n]othing was in the testimony to support any finding of damages."

■ The purpose behind granting a party contractual "expectation interest" damages is to give the aggrieved party the benefit of its bargain and to put it in as good a position as performance would have done. Restatement of the Law 2d, Contracts (1981) 102, Remedies, Section 344. The measure of damages suggested by the Restatement for compensation for a breach of contract of this sort are:

"(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

"(b) any other loss, including incidental or consequential loss, caused by the breach, less

"(c) any cost or other loss that he has avoided by not having to perform.

"Restatement of the Law 2d, Contracts (1981) 112, Measure of Damages in General, Section 347."

■ The trial court listened to the evidence of damages presented by appellant and then granted a directed verdict in favor of the appellee on the grounds that appellant provided no credible evidence of damages. Ordinarily, this court will not substitute its opinion in a case with a directed verdict unless the granting of the motion constitutes an abuse of discretion and, as such, is arbitrary, unreasonable or unconscionable. Accord *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. However, when the trial court's opinion is clearly against the manifest weight of the evidence, this court is compelled to find that the decision to grant the motion for the directed verdict is arbitrary and unreasonable.

■ At a minimum, the evidence indicates that the difference between the sale price to appellant and to Concord of the same property was $5,000. Under this court's understanding of economics, $5,000 is neither a *de minimis* nor a negligible amount of damages. Appellant also presented evidence of alternative rental space expenses which it incurred as a result of being unable to move to the 1451 Buena Vista Road property. Additionally, appellant submitted evidence as to potential uses of the land, its rental value, and the scrap value of some of the chattels on the property which, if proved with certainty, would give rise to damages. While all of these potential areas of

damage may not have been proved with sufficient certainty, it is error to state that *no* area of damage was proved with certainty. Consequently, appellant's second assignment has merit.

Therefore, for the reasons stated in this opinion, this case is reversed and remanded to the trial court for determination of the issue of damages.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, P.J., and WOLFF, J., concur.

WILLIAM H. WOLFF, JR., J., of the Second Appellate District, sitting by assignment.