**REHAB PROJECT, INC., Appellant,**

v.

**SARNO et al., Appellees.**

[Cite as *Rehab Project, Inc. v. Sarno* (1992), 80 Ohio App.3d 265.]

Court of Appeals of Ohio,
Allen County.

No. 1–91–68.

Decided July 21, 1992.

266

*Siferd & Siferd* and *Richard E. Siferd; Lawson & Roberts* and *Walter M. Lawson, Jr.,* for appellant.

*Balyeat, Daley, Balyeat & Leahy* and *Robert L. Balyeat; Gooding, Huffman & Kelley* and *Bradford Kelley,* for appellee Robert Sarno.

*Fisher, Vandemark & Fisher* and *James P. Fisher,* for appellee George C. Dunster.

---

SHAW, Judge.

This appeal arises from a civil complaint filed by plaintiff-appellant Rehab Project, Inc. ("Rehab") against defendant-appellee Robert Sarno ("Sarno"), et al., in the Common Pleas Court of Allen County. The case proceeded to jury trial and at the conclusion of the plaintiff's case the trial court granted the defendant's motion for a directed verdict pursuant to Civ.R. 50(A)(4).

Rehab assigns two errors to the trial court's judgment in favor of Sarno; one challenging the directed verdict and the second challenging the trial court's decision to exclude from evidence a certain video tape offered by Rehab at trial.

The record discloses that during 1989 both Rehab and Sarno were engaged in the business of acquiring and selling industrial pallets. The Sarno business was known as the Lima Pallet Co. ("Lima Pallet") and had been established in the community for several years prior to Rehab becoming involved in the pallet business.

In November 1989, Rehab employee Chris Dunster was caught stealing pallets from Rehab and delivering them to Lima Pallet. The incident was captured on the video tape at issue in the second assignment of error. Subsequent investigation revealed that the thefts had been occurring for several months and involved two other Rehab employees. Further investigation revealed that over a period of months, Sarno or other members of his family on behalf of Lima Pallet, had paid wholesale (or below) prices to Dunster and/or the two other Rehab employees for numerous deliveries of stolen Rehab pallets, allegedly valued at approximately $18,000.

The essence of the Rehab lawsuit is simply that Sarno was a knowing participant with Dunster and others in the theft of the pallets from Rehab. However, presumably due to the treble damages provision and other creative remedies afforded therein, most of the allegations of the Rehab complaint are framed and filed pursuant to Ohio's "Corrupt Activity" (often referred to as

RICO) statute, R.C. 2923.32(A)(1), which provides in pertinent part[1]:

"(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *."

Proof of a violation of R.C. 2923.32(A)(1) as set forth above and alleged in the complaint, requires proof of an "enterprise" and a "pattern of corrupt activity" as defined in the following sections of R.C. 2923.31:

"(C) 'Enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, governmental agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity.  'Enterprise' includes illicit as well as licit enterprises.

" * * *

"(E) 'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.  * * *

" * * *

"(I) 'Corrupt activity' means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:

" * * *

"(2)(b) * * * any violation of section * * * 2913.02 * * * [or] 2913.51 * * * of the Revised Code when the proceeds of the violation, the payments made in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars * * *."

The Rehab complaint contains certain preliminary allegations which are subsequently incorporated into four specific "counts."  The causes of action are not particularly well delineated.  Nevertheless, Count One appears to allege common-law conversion.  Count Two appears to invoke, *inter alia*, the RICO statutes via allegations of receiving stolen property (*i.e.*, a violation of R.C. 2913.51 as set forth above.)  Count Three alleges a theft enterprise under the RICO statutes (*i.e.*, a violation of R.C. 2913.02.)  Count Four alleges a

---

1. While the "RICO" statutes are perhaps most commonly employed by state and local prosecutors, R.C. 2923.34(B) clearly provides that "any person" may also institute a civil proceeding seeking relief for an injury resulting from a violation of these statutes.

conspiracy (also under the RICO statutes) to conduct the theft and receiving enterprises as set forth in counts two and three.

An allegation of corrupt activity by reason of a theft enterprise as set forth in count three of the complaint (pursuant to R.C. 2923.31[I][2][b] above), necessarily requires proof of a violation of one or more of the following sections of R.C. 2913.02:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

An allegation of corrupt activity by reason of an enterprise for receiving stolen property as described in count two of the complaint (pursuant to R.C. 2923.31[I][2][b] ), necessarily requires proof of a violation of R.C. 2913.51(A):

"(A) No person shall receive, retain, or dispose of property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

There is no dispute in the record as to the theft of a large number of pallets from Rehab and their subsequent delivery on numerous occasions to Lima Pallet. There is also no dispute that Sarno or members of his family affiliated with Lima Pallet wrote numerous checks to Chris Dunster and other employees of Rehab in payment for stolen pallets. Hence, in terms of the foregoing RICO definitions, there is no dispute that Rehab presented evidence sufficient to establish the requisite elements of an enterprise between Rehab and Sarno and a pattern of corrupt (*i.e.* theft) activity on the part of Chris Dunster.

Accordingly, at the conclusion of Rehab's case in chief at trial, only two issues remained in dispute. The first was simply whether Sarno was a knowing participant in the corrupt activity, (*i.e.* either in the theft or in the receiving of stolen pallets from Rehab.) The second involved the issue of damages. The trial court based its decision to direct the verdict against Rehab upon Rehab's alleged failure to present sufficient evidence as to either of these issues.

Civ.R. 50(A)(4) governs the directed verdict in this case and provides in pertinent part:

"(4) When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

There was no testimony presented by Rehab to directly establish that Sarno was aware the pallets which he purchased from the Rehab employees were, in fact, stolen from Rehab by those employees. On the other hand, there was testimony of animosity between Sarno and Rehab as a result of Rehab's entry into the pallet business in competition with Sarno. In conjunction with this ongoing animosity, there was testimony to indicate that Sarno was aware that the directors of Rehab were adamantly opposed to doing any business with Sarno and that, in fact, Chris Dunster had no authority from Rehab to sell pallets to Sarno. Despite this history, there was testimony that Sarno and Chris Dunster were in frequent communication regarding the purchase of pallets from Rehab and that on at least one occasion, Sarno had come to the Rehab site to talk to Dunster about the pallet business.

Testimony further established that Sarno consistently paid for the Rehab pallets with checks payable to the Rehab drivers individually as opposed to checks payable to Rehab; however, with at least one other customer, Sarno wrote checks to the business entity and not the individual drivers. Additional testimony established that some of the Rehab pallet deliveries were made to Lima Pallet during times of the day and week when either Rehab or Lima Pallet were not normally open for business. Finally, evidence was presented which tended to establish that wholesale prices or below were paid by Sarno for the Rehab pallets.

There is no question that counsel for Sarno vigorously challenged on cross-examination much of this testimony. In other instances, counsel for Sarno elicited testimony tending to raise plausible and exculpatory explanations for all of these circumstances. Most of these explanations were recited by the trial court in its decision to grant the directed verdict in favor of Sarno.

However, it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. See *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178, 423 N.E.2d 467, 469. In other words, the determination to be made by a trial court upon a motion for directed verdict is not whether one version of the facts presented is more persuasive than another; rather it is a determination that only one result could be reached under the theories of law presented in the complaint. *Eldridge v. Firestone*

*Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 96, 24 OBR 164, 165, 493 N.E.2d 293, 294. Moreover, in making this determination, the evidence submitted must be given an interpretation most favorable to the party against whom the motion is made, including not only direct or positive evidence, but also any reasonable inferences which may be drawn therefrom. *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 275, 21 OBR 345, 346, 487 N.E.2d 920, 921; see, also, *Eldridge, supra.*

■ We conclude that the testimony recited above, does constitute substantial competent evidence from which a jury could reasonably infer the presence of each of the elements of one or more of the subsections of theft (R.C. 2913.02[A][1–4]) and/or receiving stolen property (R.C. 2913.51[A]) as alleged (via the RICO counts) in the complaint. See *Strother v. Hutchinson, supra.* We note in particular the language of the latter offense described in R.C. 2913.51(A), set forth earlier, which we believe has been fairly invoked by the allegations of count two of the complaint and which would require only evidence that Sarno had "reasonable cause to believe" that these pallets were stolen. We further note that while the extraordinary relief of treble damages under R.C. 2923.34(F) requires a finding that the principal violations have been proven by clear and convincing evidence, a preponderance of the evidence is sufficient to invoke virtually all other remedies under the statute. See R.C. 2923.34(C).

■ The remaining issue in dispute at the conclusion of Rehab's case involved the amount and manner of calculation of damages. However, despite the presence of a bona fide challenge from defense counsel, there is no question that Rehab presented direct evidence which established a prima facie loss of $24,775.82, including some $18,000 in pallets and the balance in lost business as the result of theft-depleted inventory.

In view of this testimony, we are somewhat puzzled by the trial court's reference, in directing the verdict, to the alleged failure of Rehab to present any evidence of damages; particularly in view of the comments of the court and counsel for Sarno during the trial, conceding that the amount of those damages was an issue going to the weight and not the admissibility of the evidence. Accordingly, under the standards of Civ.R. 50(A)(4), we must conclude that there is certainly substantial evidence in the record thus far, upon which reasonable minds could award a sum certain in damages to Rehab.

For all of the foregoing reasons, we find the decision of the trial court directing a verdict in favor of the defendant was in error and the first assignment of error is sustained.

■ To a limited extent we also find the trial court erred in excluding, in toto, the video tape of Chris Dunster stealing pallets from Rehab and delivering them to Lima Pallet in November of 1989. The tape apparently contains an audio track containing inappropriate and perhaps prejudicial comments on the part of the camera operator as he was filming the theft. This may have been a major reason for the trial court's sustaining a defense motion *in limine* to exclude the tape pursuant to Evid.R. 403.

However, it is clear from the record that the video portion of the tape also contains footage of numerous Rehab pallets on the premises of Lima Pallet. The video footage of these pallets appears to be highly relevant as to the issue of identification, quantity and valuation of stolen pallets in the possession of Lima Pallet. In fact, the testimony establishes that review of this video tape was instrumental in Rehab's calculation of its damages. The relevance of this video is further demonstrated by defense counsel's vigorous efforts at trial (after the video had been excluded from evidence) to impeach Rehab witnesses as to their ability to identify, count or valuate these pallets from mere visual observation.

Accordingly, we find the trial court's exclusion of the video portion of this video tape was error. However, inasmuch as we are remanding the case for a new trial, we believe an in liminal ruling as to the audio portion of the tape should remain open to the discretion of the trial court, to be determined within the context of the trial evidence. Thus, the decision of the trial court to exclude the video portion of the tape is reversed. The decision of the trial court to exclude the audio portion of the tape is neither reversed nor affirmed, but simply vacated for redetermination by the court, in its discretion, at the appropriate time. To this extent, only, the second assignment of error is sustained.

The judgment of the common pleas court granting the directed verdict is reversed and the cause is remanded to that court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HADLEY, P.J., and THOMAS F. BRYANT, J., concur.