McDONALD'S CORPORATION, a Delaware corporation; and RCM Management Company, a Colorado general partnership, Plaintiffs–Appellees,

v.

BRENTWOOD CENTER, LTD., a Colorado limited partnership, Defendant–Appellant.

No. 95CA1129.

Colorado Court of Appeals,
Div. II.

Jan. 9, 1997.

Rehearing Denied Feb. 20, 1997.

Certiorari Denied Sept. 15, 1997.

Holland & Hart LLP, John C. Tredennick, Denver, for Plaintiffs–Appellees.

Pendleton Friedberg Wilson, Joel W. Cantrick, Denver, Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, Brentwood Center, Ltd., appeals the trial court's award of damages to plaintiffs, McDonald's Corporation and RCM Management Company, after judgment was entered against defendant upon plaintiffs' claim for breach of a restrictive covenant. We vacate the judgment and remand the cause with directions.

I.

Plaintiffs operate a fast-food restaurant at a shopping center owned and operated by defendant. The restaurant space was initially leased in 1959. In 1974, a restriction was incorporated into an amended lease which prohibited defendant from leasing space at its shopping center to any business competitive with plaintiffs' fast-food restaurant.

In 1990, plaintiffs purchased the leased space from defendant. The sales contract contained a restrictive covenant which prohibited defendant from leasing space at its shopping center to competing fast-food restaurants.

Meanwhile, a family restaurant at defendant's shopping center closed down in 1989. Because it remained obligated to pay rent under the terms of its 1985 lease agreement with defendant, the family restaurant company did not agree to any subsequent restrictions affecting its lease at defendant's shopping center. Although both parties to the sales contract were aware of the family restaurant's position, they agreed to the restrictive covenant, which was recorded after the sale was completed.

Claiming that it was not bound by the restrictive covenant contained in the sales contract between plaintiffs and defendant, the family restaurant company in 1993 assigned its lease to a major fast-food restaurant franchise that directly competes with plaintiffs' business. Defendant consented to the assignment of the lease, which required that such consent be obtained but provided that it could not be unreasonably withheld.

Seeking either an injunction to prevent its competitor from opening, or lost profits attributable to such competition, plaintiffs brought suit against defendant, the family

food restaurant, and the competing fast-food restaurant. The trial court denied plaintiffs' request for injunctive relief. Both the family food restaurant and the competing fast-food restaurant were thereafter dismissed as defendants.

Pending resolution of its claim concerning the restrictive covenant, plaintiffs invested approximately $285,000 for an indoor playground, which was installed in its restaurant in January of 1994. Based on the sales records of other restaurants with similar facilities, plaintiffs anticipated a significant increase in sales for at least one year after opening the indoor playground. The competing fast-food restaurant opened for business at defendant's shopping center in April of 1994.

In January 1995, the trial court granted plaintiffs' motion for partial summary judgment against defendant on the issue of liability. The trial court found that, by approving the family restaurant's assignment of its lease to a competing fast-food restaurant, defendant breached the restrictive covenant contained in the sales agreement with plaintiff.

At a subsequent proceeding held before the trial court to determine damages, plaintiffs were awarded $540,000, which represented plaintiffs' lost profits from the date that the competing fast-food restaurant opened until the restrictive covenant expires in the year 2000. The award was based on the court's calculation of the average of anticipated return on investment and anticipated lost sales.

## II.

Contending that the record does not support the trial court's calculation of damages, the defendant on appeal urges this court to reverse the judgment and remand the cause with directions to limit the award of damages to the ten months following the opening of the competing restaurant, to deduct actual profits earned by plaintiffs from the award of lost profit, and to discount the judgment to present value. We agree only that the award should be reduced to present value.

## A.

 In a breach of contract action, the objective is to place the injured party in the position he or she would have been in but for the breach. *Four Strong Winds, Inc. v. Lyngholm,* 826 P.2d 414 (Colo.App.1992). A plaintiff is entitled to recover the amount of damages required to place it in the same position it would have occupied had the breach not occurred. *Schneiker v. Gordon,* 732 P.2d 603 (Colo.1987).

 Lost profits may not be awarded if they are speculative, remote, imaginary, or impossible to ascertain. *Western Cities Broadcasting, Inc. v. Schueller,* 849 P.2d 44 (Colo.1993). Because indoor playgrounds were a relatively new concept at the time pertinent here, defendant contends that its impact on plaintiffs' sales cannot be reliably calculated. Defendant also contends that other factors, such as road construction near the shopping center and reports of substandard service at plaintiffs' restaurant, contributed to the lost profits claimed by plaintiffs as a result of the competing restaurant.

 The party seeking damages for future lost profits must establish with reasonable, but not necessarily mathematical, certainty both the fact of the injury and the amount of the loss. *Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo.1985). Sufficient evidence must be presented to compute a fair approximation of future loss. *Pomeranz v. McDonald's Corp.,* 843 P.2d 1378 (Colo.1993). The damages awarded must be traceable to and the direct result of the wrong to be redressed. *Graphic Directions, Inc. v. Bush,* 862 P.2d 1020 (Colo.App.1993).

Plaintiff submitted extensive evidence of damages, including the testimony of three expert witnesses who each presented detailed financial data analyzing the impact of the indoor playground, the competing fast-food restaurant, and the length of time that each of these factors could affect plaintiffs' future profits.

Defendant also submitted extensive evidence of damages, including the testimony of another expert witness who also offered significant data as to plaintiffs' future lost profits. Defendant's expert claimed that, not-

withstanding the existence of a competing restaurant, increased sales attributable to the indoor playground could not be maintained over time.

Based upon its assessment of the evidence, including financial projections, historical data, expert testimony, and the weight to be afforded such evidence, the trial court calculated damages in a manner different from that suggested by either party. The trial court rejected the time limitation urged by defendants.

The trial court first determined that the average annual return on investment for plaintiffs' indoor playground was approximately 30% of its $280,000 cost. Assuming that 30% annual return on investment from the date the competing restaurant opened until the expiration date of the restrictive covenant 6.1 years later, the trial court calculated plaintiffs' return on investment to be $512,400.

Next, the trial court found the anticipated average monthly sales increase resulting from the indoor playground to be $17,000 per month. The trial court found that the total anticipated sales increase for the 74 months following the opening of the competing restaurant would have been approximately "a million two and change." The trial court then multiplied $1,200,000 by a profit factor of 45 percent and determined that, during the 74 months after the competing restaurant opened, plaintiffs will have lost profits of $570,000.

The trial court then computed the average of the return on investment ($512,400) and lost profits ($570,000) by dividing the sum of those figures ($1,082,400) by two. The trial court then determined that damages were $540,000.

■ The trial court, as factfinder, has broad discretion in determining the amount of damages and its decision will not be disturbed on appeal absent an abuse of discretion. *Airborne, Inc. v. Denver Air Center, Inc.,* 832 P.2d 1086 (Colo.App.1992).

■ When evidence in the record establishes values both higher and lower than that found by the trial court, the finding is presumed correct. *Mesa Sand & Gravel Co. v.*

*Landfill, Inc.,* 759 P.2d 757 (Colo.App.1988), *rev'd on other grounds,* 776 P.2d 362 (Colo. 1989). Here, the amount of damages awarded was supported by evidence in the record reflecting both higher and lower values.

■ Because the damages award was based on historical sales revenues and investment returns having support in the record, we conclude that the calculations were reasonable and could be determined by the factfinder to be a valid means for determining damages. *See Life Care Centers v. East Hampden Associates,* 903 P.2d 1180 (Colo. App.1995). Moreover, the award is neither disproportionate to the injury nor an economic windfall to the plaintiff. *See Department of Health v. Donahue,* 690 P.2d 243 (Colo.1984).

### B.

■ In a case in which damages are sought for future lost profits and, as here, evidence is received upon the issue, the amount of the losses to occur in the future should be reduced to their present value for purposes of a damage award. *In re Marriage of Grubb,* 745 P.2d 661 (Colo.1987); *Turley v. Ball Associates Ltd.,* 641 P.2d 286 (Colo.App.1981). The fairest award of damages for such future losses is that which takes into account both discount and inflation rates. *Brady v. Burlington Northern R.R. Co.,* 752 P.2d 592 (Colo.App.1988).

■ If competent evidence of both the discount and inflation rate is presented, the factfinder must consider both in computing the award. *Brady v. Burlington Northern R.R. Co., supra.* Moreover, a trial court must make explicit findings regarding the appropriate discount and inflation rates. *Hull v. United States,* 971 F.2d 1499 (10th Cir.1992).

■ Although there are several methods used to determine present value, that choice is best left to the trial court, which is in a superior position to assure the entry of a fair and reasonable award on the basis of the evidence. The discount rate and the inflation rates could offset each other in a particular case, but there is no logical basis for assum-

ing that the two rates will net to zero. *Brady v. Burlington Northern R.R. Co., supra.*

■ Here, the record reveals that evidence was submitted as to both inflation and discount rates. Experts for both parties testified that the discount rate was significantly higher than the rate of inflation, which they agreed was 3.5 percent at time of trial. However, the trial court found it unnecessary to reduce the award because it was "both uncompounded and undiscounted."

We conclude that the trial court, when calculating the award for future damages, should have made specific findings as to inflation and discount rates when presented with such evidence and asked to do so. Here, there was no logical basis for assuming that those rates would net to zero. *See Brady v. Burlington Northern R.R. Co., supra.*

The judgment is vacated, and the cause is remanded with directions that the trial court calculate the damage award using appropriate discount and inflation rates.

CRISWELL and KAPELKE, JJ., concur.