TECHNICS, LLC, Plaintiff–Appellee,

v.

ACOUSTIC MARKETING RESEARCH
INC., d/b/a Sonora Medical Systems,
Inc., Defendant–Appellant.

No. 05CA2075.

Colorado Court of Appeals,
Div. I.

April 5, 2007.

Rehearing Denied Aug. 16, 2007.

Certiorari Granted Jan. 22, 2008.

G.W. Merrick & Associates, LLC, Glenn W. Merrick, Ryan Kirchoff, Greenwood Village, Colorado, for Plaintiff–Appellee.

Larry G. Johnson, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Acoustic Marketing Research, Inc., doing business as Sonora Medical Systems, Inc., appeals a jury verdict in favor of plaintiff, Technics, LLC, in the amount of $419,000. We reverse as to the amount of damages, remand with directions to enter a judgment in the amount of $324,000, and otherwise affirm.

Sonora is a provider of aftermarket medical imaging products together with repair and replacement services. Technics is a business entity through which an individual engages in technical consulting and other activities.

Sonora and Technics entered into a consulting and royalty agreement. The agreement stated that Technics was to provide engineering and product development services for up to nine months in support of Sonora's development and commercialization of a re-coat and re-label (RCRL) process for trans-esophageal echocardiology probes (TEE-probes). A TEE-probe is a long flexible medical instrument tipped with an ultrasound transducer that is inserted into the esophagus to produce ultrasound images of the heart.

In exchange, Sonora was to pay Technics consulting fees and royalties on the first 3,000 TEE-probes refurbished. The royalty provisions stated:

> In the event that the in-house processing cost for [RCRL] is $200 per probe or less, the royalty is:

> $300 per probe for the first 300 probes re-coated and re-labeled.

> $200 per probe for the 301 st probe to the 3,000th probe re-coated and re-labeled.

> In the event that the in-house processing cost for [RCRL] is greater than $200 per probe, the royalty is:

> $250 per probe for the first 300 probes re-coated and re-labeled.

> $150 per probe for the 301st probe to the 3,000th probe re-coated and re-labeled.

> . . . .

> At the completion of the re-coating and re-labeling of the 3000th probe, or if [Sonora] discontinues or in any way abandons the [RCRL] process prior to the completion of the 3000th probe, [Sonora] will pay [Technics] a "closure payment" of $3,000 per year for a period of five (5) years, or at its option [Sonora] can make a onetime payment of $15,000, commencing one (1) year after the date of re-coating and re-labeling the 3000th probe or the date [Sonora] discontinues or abandons the re-coating and re-labeling process.

It appears that this royalty provision was included at Sonora's request as a means of back loading the cost of the consulting services by making a portion of the cost, the royalties, contingent on the implementation of an RCRL process and payable over a period of years. Technics' hourly consulting rate was apparently reduced accordingly.

Technics provided consulting services for the full term of the consulting agreement. Sonora paid the agreed upon hourly consulting fees, conducted additional development work, and commenced production of an RCRL process. Sonora then repudiated its obligation to pay present and future royalties, asserting that, among other reasons, Technics did not contribute to the development of a viable RCRL process.

Technics commenced this proceeding seeking past and future royalties together with the closure payment. Sonora counterclaimed for declaratory judgment, alleging that the agreement was void or unenforceable, or both, because of breach, lack of consideration, fraud in the inducement, mutual mistake, and frustration of purpose.

At the time of trial, Sonora was refurbishing approximately 200 TEE-probes annually and had completed about 300. The jury found for Technics and awarded $419,000 in damages, which included past and future royalties based on a production cost of $200 or less per unit and the closure payment. This appeal followed.

Sonora asserts that the trial court erred in instructing the jury that it could award future damages based on royalties. Specifically, Sonora asserts that (1) the evidence of future royalties is too speculative; (2) the trial court erred in failing to rule on, or give tendered instructions on, its declaratory judgment claim which asked for a determination on whether past and future royalties were owed and, if so, at what unit rate; and (3) the evidence does not support a finding that the unit production cost of the RCRL process was $200 or less. We agree that the evidence does not support that unit cost and disagree with the other assertions.

## I. The Law

The fact finder, here the jury, has the sole prerogative to assess the amount of damages, and we will not set aside its award unless it is manifestly and clearly erroneous. *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1227 (Colo.App.2002).

When a party to a contract anticipatorily breaches or repudiates the contract, it is well established that the breaching or repudiating party cannot subsequently enforce the provisions of the contract. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo.2005); *Highlands Ranch Univ. Park, LLC v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1024 (Colo.App.2005); *see also In re Country World Casinos, Inc.*, 181 F.3d 1146, 1150 (10th Cir.1999); *W. Plains Serv. Corp. v. Ponderosa Dev. Corp.*, 769 F.2d 654, 657 (10th Cir.1985). A party anticipatorily repudiates a contract when it manifests a definite and unequivocal intent that it will not perform as required by the contract. *Highlands Ranch Univ. Park, LLC v. Uno of Highlands Ranch, Inc.*, supra.

The measure of damages in a breach of contract action is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred. *Taylor v. Colo. State Bank*, 165 Colo. 576, 580, 440 P.2d 772, 774 (1968). "The damages remedy is a judicial award in money, payable as compensation to one who has suffered a legally recognized injury or harm. The damages remedy is not conditional, and it is not payable periodically as loss accrues unless a statute so provides." 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 3.1, at 277–78 (2d ed.1993). Accordingly, an aggrieved party can sue immediately and recover all damages flowing from the breach whether present or prospective. *McJunkin Corp. v. North Carolina Natural Gas Corp.*, 300 F.2d 794, 801 (4th Cir.1961); *Stanton v. Dachille*, 186 Mich.App. 247, 463 N.W.2d 479, 482 (1990); 25 C.J.S. *Damages* § 43, at 377 (2002).

To recover future damages, a plaintiff must provide the fact finder with proof that damages will accrue in the future and with sufficient admissible evidence to enable the fact finder to compute a fair approximation of the loss. *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381–82 (Colo.1993). Therefore, when damages are sought for future lost profits, here lost royalties, and evidence is received on that issue, the total amount of the losses to occur in the future should be calculated and then reduced to its present value for purposes of a damage award. *McDonald's Corp. v. Brentwood Ctr., Ltd.*, 942 P.2d 1308, 1311 (Colo.App.1997); 22 Am.Jur.2d *Damages* § 63, at 103 (2003).

In *Hauser v. Rose Health Care Systems*, 857 P.2d 524 (Colo.App.1993), the plaintiff entered into a consulting agreement pursuant to which he was to renegotiate contracts between the defendant and its suppliers. The plaintiff was to receive one-third of the savings realized. A dispute arose as to the proper method of computing the savings. The plaintiff sued for damages and, while the case did not involve future damages, the damages were estimated based on a sampling of transactions. From a jury award of $850,000, the defendant appealed. A division of this court stated:

> The amount of damages awarded may be an approximation, provided that the fact of

damages is certain and that the plaintiff introduces some evidence which is sufficient to permit a reasonable estimation of damages. *See Pomera[n]z v. McDonald's Corp., [supra]; see also Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo.1985) (where damages claimed were based upon lost profits, plaintiff's recovery was not barred because such profits could not be calculated with "mathematical certainty").

Here, plaintiff presented expert testimony concerning 17 separate transactions he negotiated with [a supplier] on behalf of [the defendant], totaling $2,983,598.50 in savings to [the defendant], for which he claimed entitlement to $984,587.54 pursuant to the terms of his contract. Each of the transactional savings was detailed on a spreadsheet which was admitted as an exhibit at trial. Plaintiff's expert testified that these figures rested upon certain factual assumptions, such as average monthly expenditures before and after plaintiff renegotiated the contracts. These estimates were compiled from data for a seven to nine month period and extrapolated over the period until the trial.

[The defendant] was permitted to cross-examine plaintiff's expert on the accuracy of these factual assumptions. In addition, [the defendant] presented testimony from an expert, disputing the accuracy of, among other things, the estimated expenditures.

By disagreeing with certain of plaintiff's factual assumptions and the accuracy of his estimations, the jury could reasonably have calculated his damages at less than the $984,587.54 figure testified to by his expert. Therefore, in our view there was adequate support in the record for the jury's verdict.

*Hauser v. Rose Health Care Sys., supra,* 857 P.2d at 531.

"Doubts are generally resolved against the party in breach. A party who has, by his breach, forced the injured party to seek compensation in damages should not be allowed to profit from his breach where it is established that a significant loss has occurred." Restatement (Second) of Contracts § 352 cmt. a (1981).

While loss of future royalties, like future lost profits, is by its nature, difficult to show, that difficulty alone does not bar a court from awarding future damages. Loss of royalties as a result of a breach of contract must be established with reasonable certainty. Dobbs, *supra,* § 12.4(3), at 71–72. Lost future profits can be recovered if a plaintiff provides a reasonable basis for computation, using the best evidence obtainable under the circumstances that will enable the fact finder to arrive at a fairly approximate estimate of the loss. Evidence of past performance may be used to form the basis for a reasonable prediction of future profits. *Airborne, Inc. v. Denver Air Ctr., Inc.,* 832 P.2d 1086, 1090 (Colo.App.1992).

## II. Speculative Evidence

With respect to Sonora's first assertion that the evidence of future royalties was too speculative, we disagree.

The president of Sonora testified that it was refurbishing approximately 200 probes per year, that the production cost exceeded $600 a unit, that the refurbishing business was profitable, and that there were no plans to discontinue it.

Technics presented an expert witness who testified that he had consulted a number of physicians who appeared confident that for the foreseeable future the use of TEE-probes, which have been in use for a number of years, would likely remain stable and technological advancements would not displace their use. The expert also estimated a growth rate for probe production and refurbishing based on his market research, which included public information available from Sonora's major stockholder, a public company.

Using this growth rate, the expert estimated that the 3000th TEE-probe would be processed in somewhat over seven years. Had the expert used the current rate, the 3000th TEE-probe would be processed in approximately fifteen years. The expert indicated that if it took longer than seven years to process 3000 probes, then his future damages estimate was high, and if shorter, it was low. The expert assumed that Sonora would con-

tinue refurbishing TEE-probes as long as it was profitable and thereafter at a loss if the refurbishing otherwise benefited its business.

The expert then described the methodology he used to reach the conclusion that the present value of past and future damages suffered by Technics was $419,000 if the unit production cost was $200 or less and was $324,000 if the unit production cost was greater than $200. The expert expressed no opinion as to the unit production cost.

■ While the expert's opinion of the present value of future royalties is not to a mathematical certainty, such certainty is not required to establish reasonable certainty. *Pomeranz v. McDonald's Corp., supra,* 843 P.2d at 1381–82. The expert only had to assume the continued use of the probes and estimate interest rates, discount rates, and the rate of production. The contract provided that a fixed royalty based on the unit production cost was payable on the first 3000 units produced.

■ Sonora argues that it had a right to stop production at any time and, therefore, the only damages which could be determined with certainty were the "closure payment" that Sonora had agreed to pay Technics if production were stopped. However, each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance. *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359, 1363 (Colo.App.1994). Here, the business was profitable at the current cost, and Sonora had no present plans to either terminate or curtail the process.

Therefore, we conclude that the evidence was sufficient to establish future damages with reasonable certainty.

### III. Declaratory Judgment

■ Sonora next argues that the trial court erred in failing to rule on, or give tendered instructions with respect to, its declaratory judgment claim, which asked for a determination of whether past and future royalties were owed and, if so, at what unit rate. The effect of this declaratory judgment would, essentially, make future royalties payable as they accrue, if they accrue,

rather than immediately. Even assuming that Sonora properly raised this issue, it fails on its merits.

Sonora tendered, and the trial court rejected, the following additional jury instructions:

We, the jury, find that [Sonora] is not liable for any royalties to be paid to [Technics] on any TEE-probes which may be re-coated or re-labeled by [Sonora] in the future.

We, the jury, find that [Sonora] is liable for any royalties to be paid to [Technics] in the amount of $____ per unit for any TEE-probes, that [Sonora] may recoat or relabel in the future, up to a grand total of 3,000 probes, including those re-coated and re-labeled prior to the date of this verdict.

■ Jury instructions are within the discretion of the trial court. A judgment will not be reversed for a trial court's refusal to give requested instructions unless there was resulting substantial, prejudicial error. *Armentrout v. FMC Corp.,* 842 P.2d 175, 186 (Colo.1992).

Here, we have already concluded that future royalties were awardable in a lump sum if they could be proved with reasonable certainty. Also, a jury's decision to award future royalties leads necessarily to the conclusion that Sonora has an obligation to pay them. Because Sonora argued to the jury that any damages should be limited to the amount of the "closure payment," the award of future royalties indicates that the jury rejected that argument. In addition, as previously described, Sonora breached or repudiated the agreement as to future royalties, and therefore, it could not demand that Technics be paid only when the royalties accrued, which would resurrect the contract.

■ Finally, Sonora did not plead or otherwise assert declaratory relief on its obligation to pay past and future royalties under the agreement. Instead, Sonora requested a declaration that the agreement was void due to breach of contract, lack of consideration, fraud in the inducement, mutual mistake, and frustration of purpose.

Therefore, the trial court properly did not rule on, or give tendered instructions on, Sonora's declaratory judgment claim.

### IV.   Unit Production Cost

■ Finally, Sonora asserts that there was no competent evidence to support the jury's verdict based on a unit production cost of $200 or less.  We agree.

Here, the principal of Technics testified that (1) the in-house process could cost $200 or less per unit if he were there with a motivated team and if Sonora were refurbishing a high volume of TEE-probes;  (2) Sonora's president and director in charge of ultrasound probe repair had opined that Sonora's business could grow to refurbishing 50 or 100 TEE-probes per month;  and (3) Sonora's competitors had production costs of less than $200 per probe.  However, the principal of Technics also stated, "[T]he biggest variable between Sonora and me is that Sonora developed the process.  I'm not so sure I know what [Sonora is] doing."

The jury then heard testimony from Sonora's president and its director in charge of ultrasound probe repair who testified that the unit production cost was in excess of $600.  The president of Sonora also testified that Sonora was only performing the RCRL process on approximately eighteen to twenty probes per month.

■ If there is sufficient substantial and competent evidence to support a verdict, and the verdict is not against the clear weight of the evidence, the findings of the jury are binding on this court. *Book v. Paddock*, 129 Colo. 84, 86, 267 P.2d 247, 248 (1954).  However, damages cannot be based on mere speculation and conjecture. Accordingly, a damage award is clearly erroneous if there is no competent evidence to support it. *Sonoco Prods. Co. v. Johnson*, 23 P.3d 1287, 1289 (Colo.App.2001).

Here, we conclude that the evidence supporting Sonora's unit production cost being or becoming $200 or less is too speculative to support the damage award.  Therefore, the judgment in the amount of $419,000 must be vacated.

### V.   Remedy and Order

The royalty structure in this agreement is unique in that there are two levels of royalty, one based on a unit production cost of $200 or less, and one based on a unit production cost in excess of $200.  We have already concluded that there is insufficient evidence in the record to support a unit production cost of $200 or less.  However, there is ample evidence in the record to support a unit production cost in excess of $200.

Technics' expert testified, using the same methodology and assumptions accepted by the jury, that the past and present value of future damages suffered by Technics based on the higher unit production cost is $324,000.  Further, Sonora has not appealed the jury's findings that it breached or repudiated the agreement and is liable for damages.

Therefore, we conclude the appropriate appellate remedy in this case is to reverse the judgment as to the amount of damages and remand to the trial court for entry of judgment in favor of Technics in the amount of $324,000 together with costs and pre and post judgment interest.  The judgment is otherwise affirmed.

Judge MÁRQUEZ and Judge FURMAN concur.