24CA2204 US Electric v QED 12-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2204
El Paso County District Court No. 23CV31004
Honorable Michael P. McHenry, Judge

US Electric and Communications, LLC,

Plaintiff-Appellant,

v.

QED Inc.,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Welling and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

Colorado Law Group, PLLC, John M. Stinar, Phillip A. Vaglica, Colorado
Springs, Colorado, for Plaintiff-Appellant

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Marielle A. Moore, Kaitlin I.
Spittell, Denver, Colorado, for Defendant-Appellee

¶ 1 Plaintiff, US Electric and Communications, LLC (USEC), appeals the district court's order granting summary judgment to defendant, QED Inc. We affirm.

I. Background

¶ 2 USEC is an electrical subcontractor. It installs electrical equipment in new and existing construction facilities. Richard Headrick is USEC's president and manager. Before forming USEC in 2019, Headrick held the same title at Fountain Valley Electric. QED is a distributor of electrical equipment.

¶ 3 In 2016, QED agreed to provide favorable payment terms to Fountain Valley Electric, including an early payment discount and a quarterly rebate. In exchange, Fountain Valley Electric agreed to award QED all of its "single-family residential annual commodities and lighting bids." QED extended these payment terms to USEC, as Fountain Valley Electric's successor in interest, in exchange for a sole supplier relationship.

¶ 4 As relevant to this appeal, USEC purchased electrical material from QED for two projects known as the Link Project and the Solace Project. While no written contract memorializes it, QED provided "stage and store" services for these projects, meaning QED stored

1

materials for the projects in its warehouse until USEC needed the materials on site. QED also cut wire that USEC had purchased.

¶ 5     The parties agree that QED didn't charge USEC for these services but disagree as to why. QED maintains that these services were noncontractual and that it performed them for USEC as a courtesy. USEC asserts, by contrast, that QED provided these services as part of an oral contract in exchange for USEC using QED as its sole supplier.

¶ 6     USEC and QED initially maintained a healthy working relationship. But in 2023, USEC announced that QED would no longer be its sole supplier. That same year, QED stopped providing USEC with discounts, rebates, stage and store services, and wire cutting services.

¶ 7     In response, USEC brought claims against QED for breach of contract, fraud, breach of the covenant of good faith and fair dealing, civil theft, and conversion. On its breach of contract claim, USEC asserted that QED breached the parties' alleged oral contract by (1) discontinuing stage and store services on the Link and Solace Projects and (2) unilaterally changing the financing terms.

¶ 8 QED filed a motion to dismiss USEC's fraud claim, which the district court granted. QED then moved for summary judgment on USEC's remaining claims under C.R.C.P. 56. QED attached to its motion, among other things, a transcript of Headrick's deposition and a QED manager's declaration that was signed under the Uniform Unsworn Declarations Act (the Act), §§ 13-27-101 to -108, C.R.S. 2025. In the declaration, the QED manager attested that (1) USEC announced in February 2023 that QED would no longer serve as its sole supplier; and (2) QED informed USEC a few months later, in May 2023, that it was discontinuing its discounts, rebates, stage and store services (at least as to the Link Project), and wire cutting services.[1]

¶ 9 USEC opposed QED's motion and attached signed statements from Headrick and a former QED employee, as well as various communications between the parties. But unlike the QED manager's declaration, the statements submitted by USEC didn't comply with the Act because they weren't signed under the penalty of perjury, *see* § 13-27-102(7), C.R.S. 2025, nor were they signed

---

[1] In this opinion, we refer to these benefits provided by QED collectively as "additional services."

and sworn before a notary public or other authorized officer, *see* C.R.C.P. 108.

¶ 10    The district court granted summary judgment to QED on all remaining claims.  The court first noted that it wouldn't consider the signed statements from Headrick and the former QED employee because they weren't sworn and didn't comply with the Act.  *See* C.R.C.P. 56(e).  The court further explained, as to the breach of contract claim, that even if it did consider the signed statements, QED would still be entitled to summary judgment because (1) the statute of frauds barred the claim; and (2) USEC didn't challenge QED's timeline, which established that USEC cancelled the sole supplier agreement before QED discontinued providing the additional services.

¶ 11    On appeal, USEC's sole contention is that the district court erred by granting QED summary judgment on USEC's breach of contract claim.  Specifically, USEC argues that QED breached the parties' oral contract by discontinuing its additional services.

## II.     Standard of Review and Applicable Law

¶ 12     We review a district court's decision granting summary judgment de novo. *Griswold v. Nat'l Fed'n of Indep. Bus.*, 2019 CO 79, ¶ 22.

¶ 13     A district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c); *accord Griswold*, ¶ 23. Once the moving party has established that they are entitled to summary judgment, "an adverse party may not rest upon the mere allegations or denials of the opposing party's pleadings, but the opposing party's response by affidavits or otherwise provided in [C.R.C.P. 56], must set forth specific facts showing that there is a genuine issue for trial." C.R.C.P. 56(e).

¶ 14     "In determining whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party." *Griswold*, ¶ 24 (quoting *Peterson v. Halsted*, 829 P.2d 373, 376 (Colo. 1992)).

Summary judgment is a "drastic remedy" that should be granted only when the movant has clearly met the controlling legal standards. *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 21 (citation omitted).

¶ 15     All papers supporting or opposing summary judgment must be "[s]worn or certified." C.R.C.P. 56(e); *see Cody Park Prop. Owners' Ass'n v. Harder*, 251 P.3d 1, 4 (Colo. App. 2009) ("A court must disregard documents referred to in a motion for summary judgment that are not sworn or certified."). An affidavit, for example, must be signed under oath before an authorized officer. *See* C.R.C.P. 108; *Otani v. Dist. Ct.*, 662 P.2d 1088, 1090 (Colo. 1983). Alternatively, an unsworn declaration that complies with the Act may serve as a substitute for an affidavit. *See* C.R.C.P. 108. An unsworn declaration is a signed declaration expressly made under the penalty of perjury. § 13-27-102(7); § 13-27-106, C.R.S. 2025.

¶ 16     In contract law, a party anticipatorily repudiates a contract by manifesting a definite and unequivocal intent "that it will not perform as required by the contract." *Highlands Ranch Univ. Park, LLC v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1023 (Colo. App. 2005). Once a party repudiates a contract, it "cannot

subsequently enforce the provisions of the contract." *Technics, LLC v. Acoustic Mktg. Rsch. Inc.*, 179 P.3d 123, 126 (Colo. App. 2007), *aff'd*, 198 P.3d 96 (Colo. 2008).

### III. Analysis

¶ 17    USEC contends that the district court erred by granting QED summary judgment, asserting that material factual disputes existed regarding (1) whether the oral agreement was a valid contract; (2) whether the oral agreement was a separate contract not subject to the statute of frauds; and (3) whether QED breached the parties' oral agreement by discontinuing its additional services. To get there, USEC argues that a fact finder could infer from the circumstances of the parties' relationship that QED had orally agreed to provide the additional services so long as USEC used QED as its sole supplier. According to USEC, QED breached this oral contract when it discontinued its additional services.

¶ 18    We will assume, without deciding, that the parties' alleged oral agreement was a separate valid contract not subject to the statute

of frauds.[2]  *See Krauss v. Cath. Health Initiatives Mountain Region*, 66 P.3d 195, 202 (Colo. App. 2003) (affirming grant of summary judgment to employer after assuming, without deciding, that employee established all elements of prima facie retaliation claim and addressing only whether employee raised factual issue to counter employer's non-retaliatory explanation).

¶ 19    Even with the benefit of that assumption, however, USEC didn't raise any dispute of material fact that precluded summary judgment.  In its order granting QED summary judgment, the district court noted that QED had established that USEC cancelled its sole supplier agreement with QED *before* QED stopped providing any of the additional services.  Because USEC failed to counter QED's version of events by identifying a different date on which it cancelled the sole supplier agreement, the court determined that QED's timeline was undisputed, thus entitling QED to summary

---

[2] In accepting, for the purposes of this analysis, USEC's contention that the oral agreement was a separate valid contract, we note that the contract was for services rather than the sale of goods.  Thus, we also accept USEC's contention — again, for purposes of our analysis only — that the contract wasn't subject to the statute of frauds.  *See McCrea & Co. Auctioneers, Inc. v. Dwyer Auto Body*, 799 P.2d 394, 397 (Colo. App. 1989) (partial performance can remove an oral services agreement from the statute of frauds).

judgment. *See Technics*, 179 P.3d at 126 (when a party unequivocally indicates it will not perform its contractual obligations, it can't enforce other provisions of the contract). On appeal, USEC makes no argument challenging this reasoning by the district court. We may affirm on this ground alone. *See IBC Denv. II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 717-18 (Colo. App. 2008) (when a lower tribunal gives more than one reason for a decision, each of which independently supports the judgment, the appellant must challenge each of those reasons on appeal).

¶ 20    But even if USEC had challenged the district court's order on this ground, the record confirms that QED established its entitlement to summary judgment. A QED manager explained in a declaration that QED stopped providing the additional services only *after* USEC announced in February 2023 that it would no longer use QED as its sole supplier. And USEC acknowledges on appeal that QED agreed to provide the additional services for free "only for so long as USEC continued to use QED as its exclusive supplier." Thus, because QED established that USEC either terminated or repudiated the oral contract by announcing it would no longer use QED as its sole supplier, *see Highlands Ranch*, 129 P.3d at 1023,

the district court properly determined that any subsequent breach by QED was excused. *See Technics*, 179 P.3d at 126; *see also Highlands Ranch*, 129 P.3d at 1024 ("So long as the repudiating party refuses to retract and continues its repudiation, the nonbreaching party may still elect to treat such repudiation as a breach.").

¶ 21    USEC's attempt to identify a material dispute of fact on appeal doesn't persuade us otherwise, for two reasons. First, the statements and other documents that USEC attached to its summary judgment response weren't properly sworn or certified. *See* C.R.C.P. 56(e). Nor were USEC's statements made under penalty of perjury as required by the Act for unsworn declarations. *See* §§ 13-27-102(7), 13-27-106. As a result, USEC's documents were insufficient to raise a disputed issue of material fact. *See, e.g., Bjornsen v. Bd. of Cnty. Comm'rs*, 2019 COA 59, ¶ 23; *Credit Serv. Co. v. Dauwe*, 134 P.3d 444, 446-47 (Colo. App. 2005).

¶ 22    Second, even if we could consider USEC's documents, we agree with the district court that they wouldn't create a material factual dispute. In its submissions opposing summary judgment, USEC never specified when it stopped using QED as its sole

supplier.  USEC also didn't attempt to rebut QED's evidence that USEC terminated or repudiated the oral contract before QED stopped providing the additional services.  *See Knittle v. Miller*, 709 P.2d 32, 35 (Colo. App. 1985) (affirming summary judgment when nonmovant didn't offer any evidence disputing movant's affidavit and deposition).

¶ 23    Accordingly, the district court properly granted summary judgment to QED.

IV.    Disposition

¶ 24    We affirm the judgment.

JUDGE WELLING and JUDGE GOMEZ concur.